**LIBERTY MUTUAL INSURANCE COMPANY, Appellant,**

**v.**

**Damasio C. RIVAS, Appellee.**

**No. 589.**

Court of Civil Appeals of Texas, Corpus Christi.

April 15, 1971.

Rehearing Denied May 20, 1971.

Keys, Russell, Watson & Seaman, M. W. Meredith, Jr., Corpus Christi, for appellant.

Edwards & DeAnda, William R. Edwards, Philip K. Maxwell, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is a workmen's compensation case. Damasio C. Rivas, plaintiff, sued Liberty Mutual Insurance Company, defendant, alleging that he was injured on or about July 5, 1968 while working as an employee of Reynolds Metal Company. The trial court entered judgment on the jury verdict for the plaintiff. The parties will be designated here as they were in the trial court.

Defendant's First Point of Error reads as follows:

"The trial court erred in refusing appellant's request that the names of the members of the general jury panel available for service be shuffled and redrawn in a random manner."

This case, along with other civil cases, was set for trial for Monday, March 9, 1970. Jury lists containing the names of 29 persons were delivered to counsel for the parties at 10:30 a. m. on that date.

The jury panel assigned to the trial court was excused until 2:00 p. m., during which interval motions in limine were heard and disposed of by the trial judge. At 2:00 p. m., when the jury panel returned, defendant requested a redrawing of the jurors' names. Following a discussion between the trial judge and counsel for defendant concerning the methods used in determining the order in which the names of prospective jurors were transcribed on the general jury panel list, Mrs. Curtis, the Assignment Clerk for the District Courts of Nueces County, Texas, was called as a witness. She testified substantially as follows: (1) a letter is written to a prospective juror summoning him (her) for jury duty on a certain day; (2) each letter is numbered; (3) the person appears at the central jury room at the appointed time and brings the letter with him (her); (4) the jurors remaining after those presenting valid excuses have been excused are qualified generally and the letters are then taken up by the bailiff and are delivered to her, the assignment clerk; (5) the bailiff, in taking up the letters, circulates among the qualified jurors and takes up the letters in a random manner; (6) the names of jurors are transcribed upon the general panel list in the order in which the letters are taken up by the bailiff; and, (7) jury lists for the requesting trial courts are then prepared by her and sent to each court.

Presumably, the number affixed to each letter is the number of the juror as his (her) name was drawn from the wheel. The record is not clear on this point.

At the conclusion of Mrs. Curtis' testimony, counsel for defendant again requested the trial court to conduct a "draw-

ing of the jurors' names to make up the panel for this case". The trial court refused to do so. The jury panel assigned to hear this case was composed of jurors whose letter numbers ranged from 7 to 441. Defendant exercised all six of its peremptory challenges.

We judicially know that juries to try civil and non-capital cases (excepting lunacy cases) in the county and district courts of Nueces County, Texas, the county where this case was tried, are furnished in the manner provided by Article 2101, Vernon's Ann.Civ.St., commonly known as the Interchangeable Jury Law. Rule 223, Texas Rules of Civil Procedure which applies to Nueces County, reads as follows:

"In counties governed as to juries by the laws providing for interchangeable juries, *the names of the jurors shall be placed upon the general panel in the order in which they are drawn from the wheel, and jurors shall be assigned for service from the top thereof, in the order in which they shall be needed,* and jurors returned to the general panel after service in any of such courts shall be enrolled at the bottom of the list in the order of their respective return; provided, however, that *the trial judge upon the demand of any party to any case reached for trial by jury, or of the attorney for any such party, shall cause the names of all the members of the general panel available for service as jurors in such case to be placed in a receptacle and well shaken, and said trial judge shall draw therefrom the names of a sufficient number of jurors from which a jury may be selected to try such cause, and such names shall be transcribed in the order drawn on the jury list from which the jury is to be selected to try such case."* (Emphasis supplied).

■ Plaintiff contends that defendant waived whatever rights it might have had to a redrawing of the names of jurors. Assuming that the irregularity in the manner of making up the jury panel is a matter that could have been waived by the defendant and would have been waived by its failure to interpose a timely and proper request, we do not believe that defendant waived it in this case. The announcement of ready prior to 2:00 p. m. by defendant did not constitute a waiver of such right. The jury panel was excused by the trial court at 10:30 a. m. and returned to the courtroom at 2:00 p. m., pursuant to instruction of the court. Everything proceeded in an orderly fashion. We see nothing unusual or harmful about the timing of the request; up until that time, the court, as well as counsel, was preoccupied with preliminary matters. No compelling or limiting reason exists as to why defendant should have made such request prior to the time that it was made. Defendant's request was made before any voir dire examination, before the oath required by Rule 226 was administered, and before the admonitory instructions required by Rule 226a were given. The request was also made prior to any challenges for cause under Rule 228, and prior to any peremptory challenge, under Rule 232. Under the circumstances, defendant did not waive its right to have the names of the jurors shuffled and redrawn, as provided by Rule 223.

■ There is a dispute as to the extent of defendant's request. Plaintiff says that defendant requested a redrawing of the names of all jurors available for service in the central jury room. Defendant maintains that it requested a redrawing of only the 29 names on the list sent to the trial court from the general jury panel. Plaintiff argues that a request to shuffle and redraw the names should be made before other jurors on the general panel in the central jury room are sent to various other courtrooms for jury service. We do not agree. The shuffling and redrawing comes in the trial court after the list of veniremen is delivered to the requesting court, and is conducted by the trial judge who is required, on demand only, to "cause the names of all the members of the general

panel *available for service* as jurors in *such case* to be placed in a receptacle", etc. The language "names of all the members of the general panel available for service" can apply only to one of two groups of jurors, either those persons on the list sent to the trial court from the central jury room, or, those persons on that list plus any other jurors on the general jury panel who are then unassigned. Certainly, those members of the general panel who had already been detailed for service and sent to other courts for use in the requesting courts as jurys in their cases, would not, and in the very nature of the situation could not, be available for service in any other case. Plaintiff's contention in this regard is without merit.

We do not decide whether defendant's request was limited only to the 29 persons named on the jury list delivered to the trial court, or whether the request included those persons plus other jurors, if any, who were not, at 2:00 p. m., then assigned to another court. That decision is not necessary in order to dispose of this appeal. The trial court refused the request, whatever its extent may have been.

■ Rule 223, T.R.C.P., is explicit in the manner of listing the names of the jurors on the general panel. It is also explicit in enjoining upon the trial judge the duty of conducting, upon demand, a special drawing of the names of all members of the general panel available for service in the case assigned to his court for trial. It was error for the names of the jurors to be placed upon the general panel by the expedient of taking up of the jury letters by the bailiff and then recording the names on the general panel list in the order in which the letters were taken up, as was done here. It was error for the trial court to deny defendant's request for a redrawing of the jurors available to try its case. However, it does not necessarily follow that, because defendant's request was refused, a reversal will inevitably result. Before a reversal is ordered, the record must show that substantial injury was sustained by defendant

by reason of the action of the court. Our Supreme Court has held that even though the trial court violates a rule of civil procedure in the trial, reversal will not ensue in the absence of a showing that injury resulted. Ross v. Texas Employer's Ins. Ass'n, 153 Tex. 276, 267 S.W.2d 541 (1954); Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191 (1949).

Motion for new trial was overruled and later, after the hearing on the motion for new trial, and in the absence of counsel for defendant, the trial judge made the following comment:

"The first request I heard to shuffle the list of 28 jurors assigned to this court was on the Motion for New Trial. If that request had been made at the outset of the trial, that request would have been granted."

We are of the opinion, and so hold, that the request of defendant for a redrawing of the names of the jurors by the trial judge, as envisaged by Rule 223, T.R.C.P., was timely made. The trial judge's statement of his recollection of the request cannot overcome the request itself, which, according to the record, was made at the outset of the trial, not in the motion for new trial.

There are several cases that have been concerned with the refusal of the trial judge to comply with the provisions of some of our rules of civil procedure. Plaintiff cites Southwestern Public Service Company v. Morris, 380 S.W.2d 648 (Tex.Civ.App., Amarillo 1964, n. w. h.); Galveston, H. & S. A. Ry. Co. v. Wessendorf, 39 S.W. 132 (Tex.Civ.App., San Antonio 1896); State v. Hilton, 405 S.W. 2d 715 (Tex.Civ.App., Waco 1966), rev. on other grounds, 412 S.W.2d 41 (Tex.1967); and Curry v. State, 157 Tex.Cr.R. 237, 248 S.W.2d 166 (1952); as authority that the error committed, if any, in refusing defendant's request is harmless error. None of these cases are controlling of the instant case, and all can be distinguished from the record presented here.

In both the Morris and Wessendorf cases, it was held to be error to refuse to draw the names of the jurors upon request, but that it was not reversible error as there was no showing that the appellant had used all its peremptory challenges; here, the defendant did use all its peremptory challenges; we emphasize the language used by Judge Fly in the Wessendorf case: "Had appellant exhausted all its peremptory challenges, there might be ground for complaint, but this was not done * * *."

The Hilton case involved Rule 224, and not Rule 223. For a commentary on the difference between these two rules, the situations covered by each, and the respective statutes providing the source of these two rules, see Yturria Town & Improvement Company v. Hidalgo County, 125 S.W.2d 1092 (Tex.Civ.App., San Antonio 1939, n. w. h.), where it was held that Art. 2140 (now Rule 224) did not apply to counties under the jury wheel law. Nueces County is under the jury wheel law. Articles 199 and 2101, V.A.C.S. The Hilton case is not in point.

The Curry case, decided by the Court of Criminal Appeals, involved procedure under the then Art. 626, C.C.P.; a careful reading of that case shows that the motion, as made by appellant and as understood by the trial judge, was "one aimed at those jurors in the central jury room and not as one aimed at the 32 men then in the court room". The court went on to say: "When such an interpretation of the motion was made known to the appellant, and he made no move to notify the court that he meant something other than that which had been ruled upon by the court, then appellant must be held to have waived that something else". Clearly, in the Curry case, Art. 626, C.C.P., did not authorize the particular motion as made and understood by both the trial judge and counsel. Here, the motion, as made, was authorized by Rule 223, T.R.C.P. There was no waiver by defendant. We do not consider the Curry case as authority for plaintiff's contention.

The answer to the question presented by this appeal is not easy. Before the adoption of our present Rules of Civil Procedure, the rule of "presumed prejudice" would have made reversal clearly mandatory under the record before us. It, at best, is no simple task for this Court to determine, under Rule 434, T.R.C.P., whether the error complained of amounted to such a denial of the rights of defendant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Justice Calvert, in his article published in 31 Texas Law Review, pages 1–18, entitled "The Development of the Doctrine of Harmless Error in Texas" discusses the problem and impact of Rule 434. He points up the attendant difficulties. At page 17, it is said:

> "But the Supreme Court of Texas has not sought in any of its opinions to work out a formula by which it will be guided in all cases. Rather, the court seems to have recognized that the issue of prejudicial or harmless error is an issue entrusted to the sound discretion and good sense of the appellate courts, and it has said that it will determine the issue in each case from a study of the record as a whole * * *."

This statement is supported by the Supreme Court itself in Southwestern Greyhound Lines, Inc. v. Dickson, 149 Tex. 599, 236 S.W.2d 115, 120 (1951), where the court said such question "is to be determined as a matter of our judgment in the light of the record as a whole".

No fixed rule has been defined for the application of Rule 434, but it is generally applied in cases involving misjoinder of causes of action or parties, erroneous admission or exclusion of evidence, jury misconduct, improper remarks of counsel, irregular communication with the jury, and refusal to submit requested special issues and definitions. The policy of the law has always demanded that certain fundamental rules relating to procedure in the trial of cases in civil actions be

strictly observed. The procedures set out by Article 2101, V.A.C.S., and Rule 223, T.R.C.P., are designed to protect a litigant's constitutional guarantee of a trial by a fair and impartial jury. It was not intended that the plain violation of statutes or rules which affect fundamental or constitutional rights of litigants should be shielded by Rule 434.

In Texas Employers' Insurance Association v. McCaslin, 159 Tex. 273, 317 S.W.2d 916 (1958), the question before the Court involved the violation of Rule 327 where the plaintiff engaged a juror in conversation and asked the juror to "do all you can to help me". Justice Norvell did not treat the matter lightly and said:

> "Our constitution provides that 'The right of trial by jury shall remain inviolate.' Article 1, § 15, Constitution, Vernon's Ann.St. This means a trial by a jury unaffected by bribes, promises of reward and improper requests to 'do all you can to help me'."

The Court then held, as a matter of law, that probable prejudice to the defendant was shown under Rules 327 and 503. In meeting the burden of proof, it said:

> "The burden of the complaining party is met by showing that the trial which resulted in a judgment against him was materially unfair. Rule 327 does not preclude the drawing of logical inferences of prejudice and unfairness from the overt act itself for an action or occurrence may be so highly prejudicial and inimical to fairness of trial that the burden of going forward with proof of harm is met, prima facie at least, by simply showing the improper act and nothing more."

In Texas & Pacific Railway Company v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528 (1958), a case where the trial court refused to submit a vital defensive issue, and in answer to the argument of plaintiff that the case should be affirmed under Rules 434 and 503, it was said:

> "To apply Rules 434 and 503 in the manner suggested by respondent would deny to a party the right of trial by jury guaranteed by Section 15 of Article I of our Constitution * * *."

> * * * * * *
> "Rules 434 and 503 do not contemplate that a party may be denied the constitutional right of trial by jury. The mere denial of that right raises an inference of probable harm. Texas Emp. Ins. Ass'n v. McCaslin, 159 Tex. 273, 317 S.W.2d 916."

Heflin v. Wilson, 297 S.W.2d 864 (Tex. Civ.App., Beaumont 1956, wr. ref.), is most persuasive in our disposition of the instant case. There, the members of the jury panel from which the trial jury was chosen had been selected by the jury-commission method rather than by the jury-wheel method. It was established that the panel should have been drawn from the jury wheel. In holding that the error was reversible error, the Court said:

> "Finally, there is the question of whether, as appellee contends, the error was harmless, or whether it requires that the judgment be set aside. It would be impossible for appellant to demonstrate with any degree of certainty that he in fact suffered injury as a result of the manner in which the jury panel was selected, and he has made no effort to show specific harm or injury, but we think that harm within contemplation of the so-called harmless-error rule and Rule 434, T.R. C.P., must be presumed in the circumstances, if such rule or rules can be said to be applicable to the situation at all. Approval of the judgment would be tantamount to denying appellant his constitutional right of a trial by jury, because trial by a jury that has at least been selected in substantial compliance with law is what is guaranteed him by both the federal and our state constitutions. There was no substantial compliance with the law in this instance. Furthermore, the constitutional question

aside, approval of the judgment would, in a sense, leave to the discretion of trial courts the methods by which grand and petit jurors are to be drawn and selected, or would at least tend to promote laxness in complying with the laws governing the selection of jurors, and this should not be."

In the case at bar, while the jurors' names for the general panel were drawn from the jury wheel as provided by law, their names were not listed on the general jury panel or on the list sent down to the trial court in the order in which their names were drawn from the wheel, as required by Rule 223. The principle involved in both *Heflin* and this case is the same.

Our Supreme Court, in Tamburello v. Welch, 392 S.W.2d 114 (Tex.Sup.1965), had before it a situation where there were two defendants and the trial court refused to allow each defendant six peremptory challenges. Each defendant exhausted the three peremptory challenges allowed by the trial court. A joint and several judgment was entered against them. The Court reversed and remanded the cause to the trial court for a new trial. In so doing, the court noted that where a party is denied the number of peremptory challenges to which he is entitled, that, as a practical matter, he will usually be unable to show that an improper judgment probably resulted from an error of this nature. The Court further observed that the case was somewhat similar to the Heflin case, and after discussing *Heflin* in some detail, went on to say:

"If defendants must establish that the error in denying them additional challenges probably caused the rendition of an improper judgment, the matter of peremptory challenges will rest almost entirely in the uncontrolled discretion of the trial judge."

The opinion by Justice Walker includes a quotation from Cloudt v. Hutcherson, 175 S.W.2d 643 (Tex.Civ.App., El Paso 1943, wr. ref. w. m.), where the court said:

"We cannot believe the Supreme Court (in adopting Rule 327 dealing with jury misconduct) intended to relinquish its power and duty to see that the right of trial by jury remain inviolate and to protect its purity and efficiency.

\*      \*      \*      \*      \*      \*

Where it reasonably appears that the trial was materially unfair, the judgment should be reversed."

The Court reversed the judgments of the lower courts and said that the trial was so materially unfair that the judgment cannot be upheld. That holding is applicable in this case.

■ The right of trial by jury stands on a higher plane than expediency or fancy; and fair trial by jury means a jury selected by the law regulating its selection and impanelment. We believe that the order of listing of names of prospective jurors by the clerk in the transcribing of the names of jurors on the general jury panel list, as well as the redrawing of jurors' names by the judge, when requested, in the make-up of the trial jury list, may be of vital importance to the litigants. There may be a decided disadvantage in having unfriendly jurors listed near the top of the list, and, perhaps, an advantage where the top jurors are friendly. Common knowledge affirms that friends summoned for jury duty sit together, as do persons from the same churches, clubs, organizations, neighborhoods, or ethnic groups. Prospective jurors are frequently challenged because of their background, association, and acquaintanceship with other members on the panel. The decision to take or strike a juror is, in the final analysis, a matter of personal judgment of counsel which cannot be fairly appraised by an appellate court. In order to fairly exercise his peremptory challenges, a litigant must first be furnished a list of prospective jurors that is compiled in the order

sanctioned by law. This was not done in this case. The listing of the names on the general panel in the order in which the letters of the jurors were taken up by the bailiff, as was done in the instant case, allows a human being to adjust or dictate the order in which the names will be transcribed thereon, which is exactly what the Rule is designed to guard against. The bailiff could, if he so desired, select all, any part, or none, of a particular group, regardless of the order in which the names of the persons constituting the group were drawn from the wheel; there is no contention that this was done here, but the possibilities and dangers inherent in such practice cannot be overlooked. Whatever advantages or disadvantages there may be in having the names of friendly, unfriendly or impartial jurors near the top or bottom of the list, or even in the middle of it, are left to chance under Article 2101, V.A.C.S., and Rule 223, T.R.C.P., and the safeguards imposed by the Rule, to insure randomness in the selection of jurors as provided by the Statute, should not be tampered with or rendered useless by any other method of jury selection, irrespective of how efficient or equitable the substituted procedures may appear to the trial judge.

■ Under the express provisions of Article 2101, V.A.C.S., the defendant in this case has an absolute right to a general jury panel selected via the jury-wheel method, which is the epitome of random selection of jurors. Rule 223, T.R.C.P., protects the effectiveness of such random selection by requiring "the names of the jurors shall be placed upon the general panel in the order in which they are drawn from the wheel". This statute and this rule must, of necessity, be construed together if either is to be meaningful. In this case, failure to list the jurors' names on the general jury panel in the order that they were drawn from the wheel, in effect, has nullified and rendered useless the statute.

The general jury panel list was never compiled in any manner that had the sanction of law. There was no substantial compliance with the law. The substituted methods and procedures for the listing of names on the jury lists, for which there was no authority, statutory or procedural, completely destroyed the randomness guaranteed in the selection of the jury that returned the verdict in this case. Regardless of how impartial the bailiff may have been in picking up the letters in the order they were picked up, this act, of itself, leaves to the sole discretion of an individual the methods by which the order of petit jurors are listed on the jury lists, from which litigants will make their strikes. This should not be. This practice is highly prejudicial to the absolute right to trial by a fair and impartial jury.

We objectively observe, from the range of the numbers on the letters of the respective jurors assigned to the trial court, that the order in which such names were listed thereon could not possibly have been the same order in which they were drawn from the wheel. Moreover, it is mathematically certain that had such names been placed thereon in the order in which they were drawn from the wheel, as provided by Rule 223, instead of in the order that the letters were taken up by the bailiff from the general assembly of jurors, the composition of the jury panel which would then have been sent to the trial court would have been far different from that actually sent. When it became evident that the required casual and completely haphazard method of transcribing names on the general jury panel list, ordained by law, had been compromised to the extent that human intervention had displaced the laws of chance, defendant then took the only avenue open to it if any degree of random selection in the order of listing of names on the trial jury list was to be restored. It requested that a drawing of the jurors' names to make up the panel for the case be conducted by the trial judge. The request by defendant was

refused. A plain right given by law, that under existing conditions became doubly vital, was denied. Under the record before us, the denial of this right raised an inference of probable harm. Here, it is a matter of conjecture just how many of the 12 jurors who heard the case would have been selected had the trial court granted defendant's request.

The record reveals that the several issues submitted to the jury were vigorously contested. It is certain that the jury that answered these issues would have been differently constituted had defendant's lawful and timely request been granted. No harm could have resulted to either plaintiff or defendant had the law been observed and followed. A great deal of harm may have resulted to defendant by the denial and refusal of its request. Defendant has been placed in a situation that was not of its creating, and it was not within its power at any stage of the proceedings to determine whether it had been actually prejudiced by the order in which the jurors names were transcribed on the list.

Considering the reasoning by the Courts in the foregoing cases, the closeness of the fact issues submitted to the jury, and the violation of direct instructions of Rule 223, our studied judgment is that the defendant probably suffered prejudice. Adverting particularly to Heflin v. Wilson, supra, and to Tamburello v. Welch, supra, in this case it would be impossible for defendant to demonstrate with any degree of certainty that it in fact suffered injury as a result of the way the jury list was compiled, but we think that probable harm within the contemplation of Rule 434, T.R.C.P., has been established.

The refusal by the trial judge, after timely demand was made, to shuffle and redraw the names of a sufficient number of names from which a jury could have been selected to try the case, standing alone, might not have been reversible error under Rule 434, T.R.C.P. Here, defendant exhausted all of its peremptory challenges. The refusal by the trial judge was made after it became known to him that the requirements of Rule 223 in the order of listing of names on the general jury panel had not been followed. Even though the method employed by the assignment clerk in the order of placing jurors' names on the general panel list was not assigned as grounds for reversal, the effect of what was done in this instance cannot be ignored when the record as a whole is reviewed. The cumulative effect of the failure to (1) list the jurors' names on the general jury panel in the order that their names were drawn from the wheel, and (2) the refusal by the trial judge, under the existing circumstances, to redraw the names of the jurors to make up the trial court jury panel, transcends the reasonable limits of harmless error.

The selection of the jury was so materially unfair that the judgment cannot be upheld. When the record is considered as a whole, it is our opinion, and we so hold, that the refusal by the trial judge, after request, to draw the names of a sufficient number of jurors from which a jury could have been selected to try the case and to transcribe such names in the order drawn, as expressly provided by Rule 223, was reversible error. Defendant's First Point of Error is sustained.

In view of our disposition of this case, there is no need to consider the other points of error brought forward by defendant.

The judgment of the trial court is reversed and the cause is remanded for new trial.